IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| BATTAGLIA MANAGEMENT, INC., <br><br> Plaintiff, <br><br> v. <br><br> KRISTINA ABRAMOWICZ and HATZEL & BUEHLER, INC., <br><br> Defendants. | C.A. No. 23-615-GBW |

## MEMORANDUM ORDER

On June 6, 2023, Plaintiff Battaglia Management, Inc. ("BMI") filed a complaint alleging eight (8)[1] causes of action against Defendants Kristina Abramowicz and Hatzel & Buehler, Inc. ("Hatzel"). D.I. 1. BMI accuses Abramowicz, a former employee, of stealing four (4) confidential documents from BMI. BMI accuses Hatzel of conspiring with Abramowicz to use this confidential information to harm BMI's business. BMI filed a motion for a Preliminary Injunction. D.I. 4. Defendants' response brief included a proposed consent order, which the Court ordered the parties to consider. D.I. 26. The parties agreed to a proposed consent order, which the Court granted on July 14, 2023 (the "Consent Order"). In compliance with the Consent Order, Defendants reviewed their records and confirmed that they did not possess any confidential information belonging to

---

[1] Count I: Breach of Contract (against Abramowicz); Count II: Breach of the Duty of Confidentiality (against Abramowicz); Count III: Breach of the Duty of Loyalty (against Abramowicz); Count IV: Violation of the Delaware Uniform Trade Secrets Act ("DUTSA") (against Abramowicz and Hatzel); Count V: Violation of the Defend Trade Secrets Act ("DTSA") (against Abramowicz and Hatzel); Count VI: Tortious Interference with Prospective Business Relations (against Hatzel); Count VII: Unfair Competition (against Abramowicz and Hatzel); Count VIII: Conspiracy (against Abramowicz and Hatzel).

BMI. D.I. 31 at 2. Before the Court are Defendants' Motions to Dismiss. D.I. 28 (Hatzel's Motion); D.I. 29 (Abramowicz's Motion).

## I. BACKGROUND

Plaintiff alleges the following facts in its Complaint. Abramowicz was employed by BMI as a Payroll/Human Resources Manager. D.I. 1 ¶ 16. In her role, Abramowicz was entrusted with proprietary and confidential information, such as employee salaries, health and medical information, and billing rates for the Battaglia Companies.[2] D.I. 1 ¶ 17. Abramowicz signed a Non-Disclosure Agreement (the "NDA"), which prohibited her from disclosing, copying, or using any of BMI's confidential information. D.I. 1 ¶ 3.

On April 24, 2023, Abramowicz began unpaid maternity leave, working part-time from home. D.I. 1 ¶¶ 31-32. On May 15, 2023, Abramowicz sent four (4) documents to her personal e-mail account: "LOC 313 6.1.23 – 5.31.24 Billing Rate.xltx," "Remote Work Look Ahead Schedule.pdf," "Performance Improvement Plan.docx," and "Disciplinary Form.pdf" (hereinafter, collectively, the "Battaglia Documents"). DI. 1 ¶ 33.

On May 24, 2023, Abramowicz gave notice to BMI that she would resign her position in two (2) weeks. D.I. 1 ¶ 34. On May 25, 2023, BMI's president, Christine Meyer, had a conversation with Kendra Chadwick, who had been solicited by Hatzel. D.I. 1, Ex. B, Meyer Affidavit ¶ 27. During this conversation, Chadwick informed Meyer that, during Chadwick's conversation with Hatzel, she learned that Abramowicz had started a position with Hatzel approximately two (2) weeks earlier. *Id.* On May 30, 2023, Meyer had a telephone conversation

---

[2] BMI is the administrative entity for a group of Battaglia companies, including Battaglia Associates, Inc. ("BAI") and Battaglia Electric, Inc. ("BEI") (collectively, the "Battaglia Companies").

with Abramowicz to confront her about the information Meyer learned through Chadwick and the emails. D.I. 1 ¶ 37. During this call, Abramowicz confirmed that she had already started a position with Hatzel but claimed to be on "paid FMLA leave." *Id.* Abramowicz claimed she forwarded the Battaglia Documents to herself so she could "mentally remember how to do things," and indicated that she would delete the Battaglia Documents. *Id.*

Abramowicz has submitted a declaration indicating that she forwarded the Battaglia Documents to her personal account to access them for the work she was doing for Battaglia, that she has deleted the Battaglia Documents, and that Hatzel has not requested, received, or requested the Battaglia Documents. D.I. 19. Hatzel submitted a declaration confirming that it has never discussed the Battaglia Documents with Abramowicz and that it has never possessed them. D.I. 20.

## II. LEGAL STANDARD

To state a claim on which relief can be granted, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Such a claim must plausibly suggest "facts sufficient to 'draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Doe v. Princeton Univ.*, 30 F.4th 335, 342 (3d Cir. 2022) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Klotz v. Celentano Stadtmauer & Walentowicz LLP*, 991 F.3d 458, 462 (3d Cir. 2021) (quoting *Iqbal*, 556 U.S. at 678). But the Court will "'disregard legal conclusions and recitals of the elements of a cause of action supported by mere conclusory statements.'" *Princeton Univ.*, 30

3

F.4th at 342 (quoting *Davis v. Wells Fargo*, 824 F.3d 333, 341 (3d Cir. 2016)). Under Rule 12(b)(6), the Court must accept as true all factual allegations in the Complaint and view those facts in the light most favorable to the plaintiff. *See Fed. Trade Comm'n v. AbbVie Inc*, 976 F.3d 327, 351 (3d Cir. 2020). The Court may also consider the pleadings, public record, orders, exhibits attached to the Complaint, and documents incorporated into the Complaint by reference. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

### III. DISCUSSION

#### A. BMI has Failed to Allege a Breach of the NDA.

Count I of the Complaint is a breach of contract claim, alleging that Abramowicz violated her NDA. The NDA, attached to the Complaint, applies to information that is "proprietary to the Owner." D.I. 1, Ex. A ("NDA") § I, at 1. The "Owner" is defined as Battaglia Electric, Inc. ("BEI"), another company within the Battaglia Companies and a non-party to this lawsuit. NDA, preamble, at 1. The NDA expressly provides that it is not assignable. NDA § XI, at 4.

"[A] non-party to a contract ordinarily has no rights under the contract." *Kronenburg v. Katz*, 872 A.2d 568, 605 n.74 (Del. Ch. 2004). BMI asserts that it has standing to enforce the NDA as it was an intended third-party beneficiary. D.I. 36 at 7-8. "In order for third party beneficiary rights to be created, not only is it necessary that performance of the contract confer a benefit upon third parties that was intended, but the conferring of a beneficial effect on such third party-whether it be a creditor of the promisee or an object of his or her generosity-should be a material part of the contract's purpose." *Insituform of N. Am. v. Chandler*, 534 A.2d 257, 270 (Del. Ch. 1987). The Complaint contains no facts or allegations that indicate that BMI and BEI are even in a corporate relationship, nor does it contain any facts indicating that a material purpose of the NDA was to protect the information of BMI. *See generally* D.I. 1. Instead, BMI editorializes the NDA

4

in the Complaint, replacing references to BEI with BMI. *See, e.g.*, D.I. 1 ¶¶ 3, 24,-29. However, BMI may not change the text of the NDA, which explicitly protects only the information of BEI. NDA § I, at 1 (protecting the information of BEI, not BMI). The NDA does not mention an intent to benefit BMI, or even the existence of BMI. *See generally* NDA. Thus, on the face of the Complaint and the documents attached to it, BMI has failed to plead that it has standing to enforce the NDA. *See Tullett Prebon PLC v. BGC Partners, Inc.*, 427 F. App'x 236, 239 (3d Cir. 2011) (affirming a dismissal on the ground that the "case cannot go forward without the participation of subsidiaries who were, at the very least, the direct and immediate 'targets' and 'victims' of the alleged misconduct, actually employed the employees 'poached' in the 'Raid,' and shared an alleged ownership interest with their parent company in certain confidential information that was allegedly stolen and then misused").

In addition, the only fact that BMI pleads in support of breach consists of Abramowicz e-mailing the forwarded documents to herself, while still employed by BMI. D.I. 1 ¶ 33. However, the NDA only makes such action a breach if Abramowicz "disclose[d] the Confidential Information to any person or entity without the prior written consent" of BEI. NDA § II(A), at 2. Instead of providing particularized facts to support a breach of this provision, BMI offers a single conclusory sentence accusing Abramowicz of "taking, disclosing and using" its "confidential information." D.I. 1 ¶ 44. This is the sort of "mere conclusory statement[]" that the Court must disregard at the 12(b)(6) stage. *Princeton Univ.*, 30 F.4th at 342. Thus, BMI's claim of breach fails for the separate reason that BMI has not alleged a breach of the terms of the NDA.

### B. BMI has Failed to Plead the Elements of a Trade Secret Claim.

To state a claim under either DTSA or DUTSA[3], a plaintiff must demonstrate: (1) the existence of a trade secret, which is information with independent economic value from not being generally known or ascertainable that the owner has taken reasonable measures to keep secret; and (2) misappropriation of that trade secret, which is the knowing improper acquisition, use, or disclosure of that trade secret. *Dow Chem. Canada Inc. v. HRD Corp.*, 909 F. Supp. 2d 340, 346 (D. Del. 2012); *see* 18 U.S.C. §§ 1836(b)(1), 1839(3), 1839(5); 6 Del. C. §§ 2001(2), 2001(4). A plaintiff must identify its alleged trade secrets with a "reasonable degree of precision and specificity . . . such that a reasonable jury could find that plaintiff established each statutory element of a trade secret." *Dow Chem.*, 909 F. Supp. 2d at 346.

In the Complaint, BMI identifies four documents that Abramowicz allegedly misappropriated: "LOC 313 6.1.23 – 5.31.24 Billing Rate.xltx," "Remote Work Look Ahead Schedule.pdf," "Performance Improvement Plan.docx," and "Disciplinary Form.pdf." D.I. 1 ¶ 33. BMI describes the Battaglia Documents as containing "detailed confidential information regarding Battaglia Electric's labor rates, and proprietary Human Resources policies and procedures." *Id.* BMI bears the burden of identifying how the Battaglia Documents are "not generally known" and "derive independent economic value from not being known." With respect to the non-spreadsheet documents (i.e. the Human Resources templates), BMI does not even try to establish those elements. D.I. 36 at 11-13. BMI's Complaint provides no information that would enable a jury to find that the non-spreadsheet documents contain trade secrets, beyond the bare assertion that HR policies are "proprietary." D.I. 1 ¶ 33.

---

[3] The two statutes are substantively identical for present purposes.

6

With respect to the billing rate spreadsheet, BMI does allege that it has a "unique and proprietary pricing formula" that takes into account the "individually negotiated contract prices that the Battaglia Companies negotiate with their subcontractors, labor rates," and other factors. D.I. 1 ¶ 19. BMI alleges that this information, if public, would "prohibit the Battaglia Companies from competitively bidding on projects and from being awarded contracts." D.I. 1 ¶ 20. Defendants contend that the billing rate spreadsheet contains only publicly available union wage rates from the International Brotherhood of Electrical Workers Local 313. D.I. 31 at 9 (citing D.I. 19, Abramowicz Decl. ¶ 8(a)). It appears from the name of the spreadsheet that Defendants' contention may be true. However, at this stage of the litigation, the Court must accept Plaintiff's allegations as true, and may not adjudicate facts. *Fed. Trade Comm'n v. AbbVie Inc*, 976 F.3d 327, 351 (3d Cir. 2020); *but see* Fed. R. Civ. P. 11. BMI alleges that the spreadsheet contains "detailed confidential information regarding BEI's labor rates, including overhead, profit, and the total hourly rate charged to customers." D.I. 1, Ex. B ¶ 23. Accepting BMI's allegations as true, they are sufficient to support the existence of a trade secret. Thus, the Court finds that BMI has adequately alleged that the spreadsheet contains information which derives independent economic value from not being generally known or ascertainable.

However, BMI has failed to present a particularized allegation of misappropriation. BMI's only allegations of improper acquisition, use, or disclosure are the unsupported allegations that "Abramowicz has, is and/or is planning in the future to misappropriate BMI's trade secrets by disclosing and/or using that information in the course of her employment with Hatzel" and that "Hatzel has unlawfully acquired BMI's trade secrets through Abramowicz's unlawful behavior." These mere conclusory statements cannot prevent dismissal. *Princeton Univ.*, 30 F.4th at 342. The only factual allegation that BMI identifies in support of its trade secret claims is that

7

Abramowicz forwarded the Battaglia Documents to herself. D.I. 1 ¶ 33. This allegation (1) does not implicate Hatzel and (2) does not constitute "use" "acquisition" or "disclosure" of that information by Abramowicz.[4] Thus, BMI has failed to state claims for violation of the Delaware Uniform Trade Secrets Act (Count IV) or for violation of the Defend Trade Secrets Act (Count V).

### C. BMI's State Law Claims are Preempted by DUTSA.

Defendants seek to dismiss Counts II (fiduciary duty of confidentiality), III (fiduciary duty of loyalty), VI (tortious interference), VII (unfair competition), and VIII (conspiracy) as preempted by DUTSA. DUTSA "displaces conflicting tort, restitutionary and other law of this state providing civil remedies for misappropriation of a trade secret." 6 *Del. C.* § 2007(a). "To determine whether a tort claim is preempted by DUTSA, courts consider whether the claim is 'grounded in the same facts' as a misappropriation of trade secrets claim. *You Map, Inc. v. Snap Inc.*, No. CV 20-00162-CFC, 2021 WL 106498, at *8 (D. Del. Jan. 12, 2021), *report and recommendation adopted,* No. CV 20-162-CFC, 2021 WL 327388 (D. Del. Feb. 1, 2021). A common law claim is "grounded in the same facts" as a trade secret claim "if the failure of the misappropriation claim would doom the common law claim." *Ethypharm S.A. Fr. V. Bentley Pharm., Inc.*, 388 F. Supp. 2d 426, 433 (D. Del. 2005). DUTSA preempts "all claims stemming from the same acts as the alleged misappropriation . . . even if the information at issue is not a trade secret." *Id.*

On the face of the Complaint it is clear that Counts II, III, VI, VII, and VIII are grounded in the same facts as the trade secret misappropriation claim. With respect to Counts II and III,

---

[4] To the extent that BMI argues it is unable to make particularized allegations, because it is seeking to enjoin future conduct, those allegations have been resolved by the Consent Order. D.I. 36 at 11; D.I. 27.

8

BMI alleges that Abramowicz violated a fiduciary duty to BMI by "taking, disclosing and using BMI's confidential and propriety [sic] information in connection with her work at Hatzel." D.I. 1 ¶ 55; *see* D.I. 1 ¶ 69. The only breach of fiduciary duty that BMI alleges is the misappropriation of trade secrets, so "the failure of the misappropriation claim would doom" the fiduciary duty claims in the circumstances of this case. *Ethypharm*, 388 F. Supp. 2d at 433; *see Abrasic 90 Inc. v. Weldcote Metals, Inc.*, 364 F. Supp. 3d 888, 906 (N.D. Ill. 2019) (applying Delaware law and finding that DUTSA preempts fiduciary duty claims because "if the information at issue were publicly available" then "it is difficult to imagine how the defendants could be said to have . . . breached the fiduciary duty they owed" by "referencing the information just as any other member of the public could").

With respect to Count VI, BMI alleges that Hatzel tortiously interfered with BMI's business by "using the information acquired by Abramowicz through her employment" at BMI. D.I. 1 ¶ 96. BMI provides no other facts to support tortious interference. To the extent the "alleged wrongful interference is Defendants' misappropriation of Plaintiff's" trade secrets, "the claims are preempted by DUTSA. If the alleged interference is something else, the Complaint does not say what it is." *You Map*, 2021 WL 106498, at *9. In its response brief, BMI suggests that Hatzel has tortiously interfered by "establish[ing] a pattern of poaching Battaglia Companies' employees." D.I. 36 at 14; *see* D.I. 1 ¶ 23. Even if the Court were to accept this unpled theory, "the mere hiring away of employees from a rival is *per se* legal," and BMI does not allege facts that suggest this poaching was done in an unlawful manner. *Associated Radio Serv. Co. v. Page Airways, Inc.*, 624 F.2d 1342, 1354 (5th Cir. 1980). Thus, any portion of BMI's tortious interference claim which is not preempted by DUTSA independently fails for not being unlawful.

With respect to Count VII, BMI alleges that Abramowicz and Hatzel have unfairly competed with BMI "[b]y the allegations described above." D.I. 1 ¶ 100. In its answering brief, BMI recites the standard for unfair competition, and states that Defendants are "utilizing BMI's confidential and proprietary information." D.I. 36 at 15. Notably, BMI has failed to allege any unfair competition other than the alleged misappropriation of trade secrets. Thus, BMI's unfair competition claim is preempted by DUTSA.

With respect to Count VIII, BMI alleges a civil conspiracy. "Essential to the claim for civil conspiracy is an underlying wrongful act." *Amkor Tech. Inc. v. Synaptics, Inc.*, 2016 WL 9307501, at *1 n. 1 (D. Del. Oct. 24, 2016). "[W]here the underlying wrong is the misappropriation of trade secrets, a claim for civil conspiracy will be preempted by DUTSA." *Id.* BMI pleads that defendant's underlying wrongful act was the "unlawful and tortious conduct described above." D.I. 1 ¶ 110. In its response brief, BMI titles the section of its brief on conspiracy "Defendants Conspired To Misappropriate BMI's Trade Secrets." D.I. 36 at 15. BMI has not alleged any other underlying wrongful act. Thus, BMI's conspiracy claim is preempted by DUTSA, because the only underlying wrongful act alleged against Defendants is misappropriation of BMI's trade secrets.

BMI argues that "[a]t this stage of litigation, it is difficult to assess whether the common law claims are grounded in the same facts as the DUTSA claims." D.I. 36 at 16. However, courts in this district routinely address preemption at the motion to dismiss stage. *See, e.g., Leucadia, Inc. v. Applied Extrusion Techs., Inc.*, 755 F. Supp. 635, 637 (D. Del. 1991) (dismissing unfair competition as DUTSA-preempted); *You Map,* 2021 WL 106498, at *8 (unfair competition, tortious interference); *Amkor,* 2016 WL 9307501, at *1 n.1 (civil conspiracy). While courts in this district sometimes put aside the question of preemption for later, in the face of a preemption

10

challenge, the Plaintiff must plead facts showing that it can "make out a . . . claim without proving a trade secrets claim." *Accenture Global Servs. GMBH v. Guidewire Software Inc.*, 631 F. Supp. 2d 503, 508 (D. Del. 2009). Plaintiff has failed to do so in its Complaint. Thus, BMI's state law claims are preempted by DUTSA.

### D.     Dismissal is Granted with Prejudice.

Abramowicz contends that any dismissal should be with prejudice. D.I. 30 at 19-20. "Leave to amend must generally be granted unless equitable considerations render it otherwise unjust." *Arthur v. Maersk, Inc.*, 434 F.3d 196, 204 (3d Cir. 2006); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962). "The Third Circuit has adopted a liberal approach to the amendment of pleadings." *Arthur*, 434 F.3d at 204. "In the absence of undue delay, bad faith, or dilatory motives on the part of the moving party, the amendment should be freely granted, unless it is futile or unfairly prejudicial to the non-moving party." *Id.* (citations omitted). An amendment is futile if it "would fail to state a claim upon which relief could be granted." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997). "The standard for assessing futility is the 'same standard for legal sufficiency as applies under [Federal] Rule [of Civil Procedure] Rule 12(b)(6).'" *Great W. Mining & Min. Co. v. Fox Rothschild, LLP*, 615 F.3d 159, 175 (3d Cir. 2010) (quoting *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000)).

Abramowicz argues that dismissal should be with prejudice because any amendment would be futile—BMI may not, by amending its pleadings, alter the terms of the NDA or the documents that Abramowicz emailed to herself. D.I. 30 at 19-20. BMI did not contest that amendment would be futile, effectively conceding that any dismissal should be with prejudice. D.I. 36; *see Freed v. St. Jude Med., Inc.*, 364 F. Supp. 3d 343, 351 n.6 (D. Del. 2019) (failing to contest a point is a

11

concession). BMI has also not moved for leave to amend, or identified any factual allegations it could add upon amendment. Thus, dismissal will be with prejudice.

## IV. CONCLUSION

For the above reasons, the Court grants Defendants' Motion to Dismiss.

Therefore, at Wilmington this 26th day of June 2024, **IT IS HEREBY ORDERED** that Defendants' Motions to Dismiss (D.I. 28; D.I. 29) are **GRANTED**.

GREGORY B. WILLIAMS
UNITED STATES DISTRICT JUDGE