## UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

|  |  |
|---|---|
| **BATTAGLIA MANAGEMENT, INC.** : | |
| Plaintiff, : | |
| v. : | CASE NO. 1:23-cv-00615-GBW |
| **KRISTINA ABRAMOWICZ and** : | |
| **HATZEL & BUEHLER, INC.** : | |
| Defendants. : | |

### PLAINTIFF'S BRIEF IN SUPPORT OF MOTION FOR REARGUMENT

Dated: July 10, 2024

**COHEN SEGLIAS PALLAS
GREENHALL & FURMAN, P.C.**

**FRANCIS D. NARDO, ESQUIRE**
DELAWARE BAR NO. 7091
**ROY S. COHEN, ESQUIRE**
*(Admitted Pro Hac Vice)*
**JONATHAN LANDESMAN, ESQUIRE**
*(Admitted Pro Hac Vice)*
500 Delaware Avenue, Suite 730
Wilmington, DE 19801
Phone: (302) 425-5089
Fax:    (302) 425-5097
Email: fnardo@cohenseglias.com
       rcohen@cohenseglias.com
       jlandesman@cohenseglias.com

*Attorneys for Plaintiff,
Battaglia Management, Inc.*

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ...................................................................................................................1

II. PROCEDURAL HISTORY................................................................................................1, 2

III. BMI'S AMENDED PLEADING WOULD INCLUDE SPECIFIC FACTUAL
ALLEGATIONS REGARDING DEFENDANTS' WRONGDOING............2, 3, 4, 5, 6, 7

    A. The gist of the Initial Complaint..........................................................................2, 3

    B. The Defendants' Declarations...................................................................................3

    C. The Gist of the additional allegations that BMI seeks to include in
        an Amended Complaint ..........................................................................3, 4, 5, 6, 7

        1. Breach of Contract against Abramowicz
        2. Violation of the Defend Trade Secrets Act against Defendants

IV. PURSUANT TO THE LIBERAL STANDARD GOVERNING THE AMENDMENT OF
PLEADINGS, BMI SHOULD BE GRANTED LEAVE TO FILE THE FAC...............8, 9

V. CONCLUSION.......................................................................................................................10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arthur v. Maersk, Inc.*,
    434 F.3d 196 (3d Cir. 2006) ............................................................................................. 8

*Bimbo Bakeries USA, Inc. v. Botticella*,
    613 F.3d 102 (3d Cir. 2010) ............................................................................................. 8

**Other Authorities**

Local Rule 7.1.5 ............................................................................................................. 2, 8

Rule 12(b)(6) ............................................................................................................. 1, 2, 3

I. **INTRODUCTION**

On June 26, 2024, this Court issued an Order granting motions to dismiss filed by Kristina Abramowicz ("Abramowicz") and Hatzel and Buehler, Inc. ("Hatzel") (collectively "Defendants") dismissing the complaint without giving Plaintiff Battaglia Management, Inc. ("Plaintiff" or "BMI") an opportunity to amend its pleading.  With this motion for reargument, BMI respectfully requests leave to file a first amended complaint ("FAC") so that it can allege additional facts that address the deficiencies identified in the Court's Rule 12(b)(6) order.[1]

Although motions for reargument are sparingly granted, this Court should apply a liberal standard when considering a party's request for leave to amend a pleading.  As discussed below, leave to amend is warranted in this case because BMI's FAC would include specific and detailed allegations that provide additional factual background and context regarding the Defendants' unlawful scheme, and explain more fully how Defendants have misappropriated and utilized BMI's confidential information and trade secrets, including when systematically soliciting and poaching BMI's employees, and when unfairly competing with BMI during the competitive bidding process.  With its FAC, BMI stands ready and able to state viable causes of action against Defendants.  BMI respectfully submits that it has been wronged by Defendants, and that it should not be denied the opportunity to pursue its claims in this Court.

II. **PROCEDURAL HISTORY**

On June 6, 2023, BMI initiated this civil action by filing a complaint against Defendants, and filed a motion for preliminary injunction.  On July 14, 2023, for good cause shown, this Court approved the parties' stipulation and entered an Order on BMI's motion for preliminary injunction.  The Court's July 14, 2023 Order included a definition of BMI's confidential and proprietary

---

[1] For purposes of this motion only, BMI shall assume, *arguendo*, that its initial complaint is deficient.

information ("CPI"), and enjoined Defendants from using BMI's CPI.  Further, the Court's July 14, 2023 Order ordered Abramowicz to submit her cellular telephone to a third party for forensic examination, and ordered Hatzel and its owners and senior managers to refrain from making disparaging comments or remarks about BMI on social media.

On October 6, 2023, Defendants separately filed motions to dismiss the complaint pursuant to Rule 12(b)(6).  While Defendants' motions to dismiss were pending for approximately nine (9) months, Defendants insisted that it would be inappropriate to engage in substantive discovery until the pleadings were closed.  For this reason, there were no depositions and minimal discovery was conducted while the parties waited for a ruling on Defendants' Rule 12(b)(6) motions.

On June 26, 2024, the Court issued an order granting Defendants' motions to dismiss.  The Court did so with prejudice, ruling that BMI may not file an amended pleading.  The Court did not conduct oral argument on Defendants' motions.

Now, pursuant to Local Rule 7.1.5, BMI files its motion for reargument, respectfully asking the Court to grant leave so that BMI may file its FAC.

### III. BMI'S AMENDED PLEADING WOULD INCLUDE SPECIFIC FACTUAL ALLEGATIONS REGARDING DEFENDANTS' WRONGDOING

#### A. The gist of the Initial Complaint

The gist of BMI's initial complaint is that while Abramowicz was still employed by BMI as a Payroll/Human Resources Manager, she secretly began working for BMI's direct competitor, Hatzel.  While working as a double-agent for Hatzel, without seeking or obtaining permission from anyone at BMI, Abramowicz secretly took four (4) company documents by emailing them to her personal email account.  One of the documents that Abramowicz took was a spreadsheet containing information about the labor rates that BMI charges its customers for service work.  The initial complaint also alleges that Hatzel has already poached BMI employees, and that Defendants have

2

used and will continue to use the confidential information misappropriated by Abramowicz via email. The initial complaint alleges that Abramowicz breached a non-disclosure agreement (which identifies BMI's sister company, Battaglia Electric, Inc., as her employer), and that Defendants violated the Defend Trade Secrets Act.[2]

### B. The Defendants' Declarations

The Court's Rule 12(b)(6) decision includes numerous references to the declarations of Abramowicz and Hatzel. Not surprisingly, the Defendants' declarations deny any and all wrongdoing, with Abramowicz claiming that she innocently emailed the purloined documents to herself so that she could perform work for BMI, and Hatzel claiming that it never had any discussions with Abramowitz about the trade secret information that she misappropriated from BMI while she was working as a double agent for competing companies.

It is respectfully submitted that the Court should have completely disregarded the Defendants' self-serving declarations when ruling upon Defendants' Rule 12(b)(6) motions. Indeed, Defendants' denials directly contradict the allegations set forth in the initial complaint. Moreover, as a practical matter, BMI has not yet had the opportunity to test or challenge the veracity of Defendants' denials because: (a) Defendants have refused to participate in substantive discovery while their motions to dismiss remained pending; and (b) Defendants stipulated to the entry of a stipulated preliminary injunction order, making an evidentiary hearing (where Defendants would have been cross-examined) unnecessary.

### C. The Gist of the additional allegations that BMI seeks to include in an Amended Complaint

#### 1. Breach of contract against Abramowicz

---

[2] BMI's motion for reargument is limited to two (2) causes of action: breach of contract against Abramowicz, and violation of the Defend Trade Secrets Act against Defendants. That being said, BMI reserves its right to appeal the dismissal of the remaining causes of action set forth in the initial complaint.

3

The Court dismissed BMI's breach of contract claim for two (2) reasons. First, the Court found that BMI did not have standing to enforce the non-disclosure agreement, because it was between Abramowicz and Battaglia Electric, Inc. ("BEI"). The FAC will address this issue by adding BEI as a named Plaintiff. Further, the FAC will clarify that BMI and BEI are part of a family-owned group of related companies, and that Abramowicz, in her role as Payroll/Human Resources Manager for BMI, completed the weekly payroll for BEI, BMI, and the other Battaglia companies, and that she had access to all of the employees' confidential wage and salary information.

This information was not limited to union rates. It includes wage information for safety managers, project management, and office employees (who, as discussed below) were systematically solicited by Hatzel. In other words, Abramowicz performed payroll-related work for BEI, and she was contractually bound to keep this information about employees' wage rates confidential. Even if, *arguendo*, BMI does not have standing to bring suit for Abramowitz's breach of the non-disclosure agreement, BEI clearly does.

Second, the Court's order noted that the initial complaint did not adequately plead that Abramowicz disclosed the confidential information that she has admittedly misappropriated. To put this issue in its proper context, the FAC will assert additional allegations, including:

1. the fact that BEI/BMI and Hatzel are direct competitors,
2. that Hatzel employs over 1,000 employees and is many times the size of BEI/BMI,
3. that beginning in early 2023, Hatzel's President, Bill Goeller, began a campaign of personally sending emails and other electronic communications to over a

>   dozen of BEI/BMI's key employees to solicit them to leave their employment and accept a position at Hatzel,
>
> 4. that Hatzel successfully poached approximately six (6) employees of BEI/BMI,
>
> 5. that much of the aforementioned solicitation and poaching was conducted by Hatzel while Abramowicz was secretly working as a double agent for Hatzel and while she was still employed by BMI,
>
> 6. that the confidential wage rates entrusted with Abramowicz would not otherwise have been known by any of BMI's competitors, including Hatzel, and
>
> 7. that even though BMI cannot point to a smoking gun communication proving with certainty that Abramowicz shared confidential wage information with Hatzel, the reasonable inference in this case is that she did make such a disclosure, and that her doing so materially aided Hatzel and Bill Goeller in their quest to successfully poach as many BMI/BEI employees as possible.

Likewise, with respect to the issue of Abramowicz's disclosure of confidential information, the spreadsheet that she secretly emailed to herself while working as a double agent did not merely contain union wage rates. On the contrary, the spreadsheet contained confidential formula and included BMI's specific profit and overhead assumptions to arrive at pricing metrics that would be used by BMI's estimators when submitting competitive bids to customers. The FAC would also allege:

> 1. that BMI/BEI typically obtain their work through a competitive bidding process,
>
> 2. that BMI/BEI had a well-established history of performing Facility Enhancement Projects ("FEPs") at substations operated by PEPCO,

5

3. that when preparing bids for FEPs, BMI/BEI would utilize the information and rates set forth in the spreadsheet that was misappropriated by Abramowicz,

4. that disclosure of the spreadsheet would provide a competitor such as Hatzel with a competitive advantage during the bidding process because it would know BMI/BEI's confidential overhead and profit rates, and

5. that Hatzel, who had not previously competitively bid against BMI/BEI for FEP work for PEPCO, successfully bid for such work shortly after Abramowicz began working for Hatzel.

Once again, even though BMI does not have a smoking gun email showing that Abramowicz disclosed the spreadsheet that she stole to Hatzel, viewing the facts in the light most favorable to BMI, it is reasonable to infer that she did exactly that, and that Hatzel has actively participated in and reaped the benefit from Abramowicz's unlawful conduct.

### 2. Violation of the Defend Trade Secrets Act against Defendants

The Court's order found that the spreadsheet taken by Abramowicz constituted a trade secret within the meaning of the Defend Trade Secrets Act ("DTSA"), but nevertheless dismissed the DTSA claims against Defendants, finding that BMI failed to sufficiently allege "use", "acquisition", or "disclosure" by Abramowicz, and failed to include allegations that implicate Hatzel. First, the FAC would clarify that the trade secrets misappropriated by Abramowicz are not limited to the spreadsheet. As noted above, Abramowicz served as BMI's Payroll/Human Resources Manager, and she was entrusted with the confidential wage rate information for BMI and BEI's employees. She continued to be entrusted with this information, and accessed it, while she was secretly working for a direct competitor. Neither Hatzel nor any of BMI/BEI's

competitors had access to this information. Clearly, this information constitutes a protectable trade secret.

Second, with respect to the issue of whether Defendants used, acquired, and/or disclosed any trade secrets, the FAC would allege that at the same time that Abramowicz was secretly working as a double agent, Hatzel's corporate president, Bill Goeller, was in the midst of an aggressive and comprehensive campaign to personally email over a dozen of BMI/BEI's key employees, soliciting them to leave their employment and to join Hatzel. While Defendants have submitted Declarations denying that Abramowicz shared any confidential information with Goeller or anyone else at Hatzel, Defendants' denials should not be credited by the Court at this time. Instead, viewing the facts which BMI/BEI seek to plead in the FAC in a light most favorable to Plaintiffs, it is reason to infer that Abramowicz did in fact share confidential wage information with Goeller to facilitate his unlawful solicitation of BMI/BEI's employees. To that extent, the FAC will specifically allege that Abramowicz, without seeking permission or authorization, accessed confidential wage information while she was secretly working for Hatzel, and that she and Hatzel used, acquired, and disclosed this information as part of Hatzel's systematic solicitation of BMI/BEI's employees.

The same is true with respect to the use, acquisition, and disclosure of the confidential information set forth in the spreadsheet taken by Abramowicz. The facts that will be outlined in the FAC, including the facts related to Hatzel's sudden entry into the competitive bidding process for PEPCO's FEP projects, support the reasonable inference that will be pleaded in the FAC that Defendants used, acquired, and disclosed BMI/BEI's trade secrets to take projects and work away from Plaintiffs, and that without further intervention by this Court, that they will continue doing so.

To the extent that BMI cannot point to direct evidence of Defendants' use of trade secrets this case is not at all unique. Indeed, federal courts in trade secrets cases are often confronted with similar factual scenarios, and pursuant to the "inevitable disclosure" doctrine, have held that it is only reasonable to presume that a defendant who helps herself to confidential information does so with the intent to use it for a subsequent employer. *See Bimbo Bakeries USA, Inc. v. Botticella,* 613 F.3d 102 (3d Cir. 2010). In *Bimbo*, the Third Circuit employed the inevitable disclosure doctrine where a forensic examination established that an employee had accessed confidential information before defecting to a competing business. Even though the plaintiff had not come forward with smoking gun evidence, the Third Circuit held that the fact of the case, including the former employee's unauthorized accessing of confidential information, demonstrated a substantial threat of disclosure.

## IV. PURSUANT TO THE LIBERAL STANDARD GOVERNING THE AMENDMENT OF PLEADINGS, BMI SHOULD BE GRANTED LEAVE TO FILE THE FAC

The applicable local rule, Local Rule 7.1.5., states that motions for reargument shall be sparingly granted. However, it is equally well-settled law that this Court should apply a liberal standard when considering whether to allow a party to amend its pleadings. *Arthur v. Maersk, Inc.,* 434 F.3d 196, 204 (3d Cir. 2006). Here, it is respectfully submitted that denying BMI the opportunity to file an amended pleading would be unjust. First and foremost, for all of the reasons stated above, BMI is ready and able to allege additional, specific facts that address all of this Court's previously stated concerns, and clearly state viable causes of action for breach of contract against Abramowicz and violation of the DTSA against Abramowicz and Hatzel. Second, even though Defendants have submitted declarations denying any wrongdoing, the well-pleaded facts strongly suggest otherwise, and Plaintiff should be afforded the opportunity to conduct discovery

so that it can develop a factual record and test the veracity of Defendants' denials. Third, BMI has not heretofore filed an amended pleading, and the FAC would be the first amendment to the initial complaint.

## V.    CONCLUSION

For all of these reasons, BMI respectfully requests that its motion for reargument be granted, and that it be granted leave of Court to file the FAC.

|  |  |
|---|---|
|  | **COHEN SEGLIAS PALLAS GREENHALL & FURMAN, P.C.** |
| Dated: July 10, 2024 | **FRANCIS D. NARDO, ESQUIRE** <br> DELAWARE BAR NO. 7091 <br> **ROY S. COHEN, ESQUIRE** <br> *(Admitted Pro Hac Vice)* <br> **JONATHAN LANDESMAN, ESQUIRE** <br> *(Admitted Pro Hac Vice)* <br> 500 Delaware Avenue, Suite 730 <br> Wilmington, DE 19801 <br> Phone: (302) 425-5089 <br> Fax:    (302) 425-5097 <br> Email: fnardo@cohenseglias.com <br>            rcohen@cohenseglias.com <br>            jlandesman@cohenseglias.com <br><br> *Attorneys for Plaintiff,* <br> *Battaglia Management, Inc.* |

## CERTIFICATE OF SERVICE

I, Francis D. Nardo, Esquire, hereby certify that on this 10th day of July, 2024, a true and correct copy of the foregoing Plaintiff's Motion for Reargument and Plaintiff's Brief In Support of Plaintiff's Motion for Reargument has been filed electronically and is available for viewing and downloading from the ECF system and was served via electronic notification upon all counsel of record via the Court's CM/ECF System

                                          */s/ Francis D. Nardo, Esquire*
                                          **Francis D. Nardo, Esquire.**

9295744.1 59127-0001